CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

July 29, 2024

LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
    DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **JAMES EDWARD WORKMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:23-cv-048** |
| | ) | |
| **v.** | ) | **By:   Michael F. Urbanski** |
| | ) | **Senior United States District Judge** |
| **LHC GROUP, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff James Edward Workman initiated this retaliatory termination action in Wythe County Circuit Court on October 13, 2023. After removing the case to this court, defendant LHC Group, Inc. ("LHC") filed a motion to dismiss the complaint, ECF No. 13, and Workman responded by seeking leave to file an amended complaint, ECF No. 19, which the court granted, ECF No. 20. This matter is now before the court on LHC's motion to dismiss Workman's amended complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 25. Following careful consideration of the parties' arguments and the relevant caselaw, LHC's motion to dismiss is **GRANTED**.

## I. BACKGROUND

Workman was hired by LHC—a home healthcare and hospice services provider—in June 2019 as an account executive.[1] In this role, Workman was responsible for establishing relationships with healthcare providers and hospitals on LHC's behalf. During his

---

[1] These facts are taken from Workman's amended complaint, ECF No. 21, accepted as true and construed in the light most favorable to Workman for the purposes of the motion to dismiss.

employment, he received positive performance reviews and was never subject to disciplinary action.

In the summer of 2022, Workman attended a work-related picnic. The picnic was sponsored by LHC, and LHC directed its employees to attend the event. Attendees included LHC employees, along with current and prospective clients of LHC. At the picnic, Workman was seated with two co-workers and the wife of one of those co-workers. At the table, the co-worker's wife asked a potential client about his sex life and sexual desires, in which she "discussed sexualized practices" and "sexual activity at length." She spoke loudly and was heard by multiple attendees, including Workman and other LHC employees. Workman alleges that the comments were repeated, obscene, and of a sexualized harassing nature, and—because they were overheard by LHC employees—they created a hostile working environment. Workman, recognizing that these comments violated both company policy and laws regarding workplace harassment and hostile work environments, reported the incident to his supervisor shortly after the picnic. Despite Workman's report, LHC did not take any corrective measures or otherwise appear to investigate the incident.

In the weeks that followed the report, Workman continued to perform his job duties at a high level. However, in January 2023, without warning, LHC informed Workman that it was terminating his employment based on an incident that occurred just after the summer of 2022, in which Workman appeared inappropriately during an early morning videoconference call. During the call, Workman, who had not yet put on a shirt, activated his camera, showing his neck and face. Workman maintains that the incident was brief and accidental, and that the

camera never showed his bare torso. Accordingly, Workman asserts that the incident was pretext for the true reason for his firing—his report of workplace harassment at the picnic.

Workman initiated this action in Wythe County Circuit Court on October 13, 2023. After removing the suit to this court on diversity grounds, LHC filed a motion to dismiss the complaint for failure to state a claim, ECF No. 13, and Workman responded by seeking leave to file an amended complaint, ECF No. 19, which the court granted, ECF No. 20. The amended complaint asserts one cause of action under Virginia's whistleblower statute, Va. Code § 40.1-27.3, which, in relevant part, prohibits an employer from discharging an employee because the "employee in good faith reports a violation of any federal or state law or regulation to a supervisor." Am. Compl., ECF No. 21.

LHC filed a motion to dismiss Workman's amended complaint for failure to state a claim on the basis that it was not plausible for Workman to believe that the conduct he reported violated any laws. ECF No. 25. Workman responded in opposition, ECF No. 27, and LHC replied, ECF No. 30. The parties asked the court to rule on the papers, and the court agrees that a hearing would not aid the decisional process. Accordingly, the issues are fully briefed and LHC's motion is ripe for resolution.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); see also Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a 'complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.'") (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis omitted)).

A court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986); conclusory allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). "Thus, 'in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (alterations omitted) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

## III.   DISCUSSION

In Workman's amended single-claim complaint, he asserts that LHC violated Virginia's whistleblower statute by firing him because of his good faith report to his supervisor of unlawful conduct. LHC argues that Workman's subjective belief that the co-worker's wife's conduct was unlawful is not enough. Instead, Workman needed to also show that it was objectively reasonable for him to believe that the conduct was unlawful and, because he is unable to do so, the court must dismiss the claim.

Virginia Code § 40.1-27.3 provides, in pertinent part, that "[a]n employer shall not discharge . . . an employee . . . because the employee . . . in good faith reports a violation of any federal or state law or regulation to a supervisor." Va. Code § 40.1-27.3(A)(1). Accordingly, to state a claim under the statute, the plaintiff must allege facts sufficient to show that "(1) []he made a good faith report of a federal or state violation to a supervisor, (2) was discharged by h[is] employer, and (3) h[is] report was the 'but for' cause of h[is] discharge." Moore v. Copper River Shared Services, LLC, No. CL-2023-9565, 2024 WL 366099, at *9 (Va. Cir. Ct. Jan. 30, 2024). LHC only disputes the first element of Workman's claim for purposes of the motion to dismiss—specifically, whether Workman's report regarding the co-worker's wife's conduct was made in "good faith."

Because the statute—enacted in 2020—is relatively new, the jurisprudence addressing the requirements to state a claim under it is limited.[2] The number of opinions assessing the

---

[2] Among those opinions are those that evaluate discrete issues not in dispute here, such as the definition of "supervisor" or when a cause of action accrues under the statute. See, e.g., Moore, 2024 WL 366099, at *8 (construing the definition of "supervisor" broadly); Kulshrestha v. Shady Grove Reprod. Sci. Ctr., P.C., 668 F. Supp. 3d 411, 414 (E.D. Va. 2023) (concluding that the cause of action accrues at the time of retaliation).

meaning of a "good faith report" is even smaller. However, the court's review of the existing caselaw shows that it is well-settled that, to establish "good faith," a "plaintiff is not required to show that the underlying report of unlawfulness was in fact meritorious." Wood v. Bristol Va. Util. Auth., 661 F. Supp. 3d 538, 550 (W.D. Va. 2023) (Jones, J.) (citing Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 355 n.1 (4th Cir. 1985), overruled on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)); see also Cook v. Roanoke Elec. Steel Corp., No. 7:22-cv-040, 2023 WL 3059160, at *7 (W.D. Va. Apr. 24, 2023) (Dillon, J.) (quoting Wood, 661 F. Supp. 3d at 550). Beyond that, courts also agree that a "good faith" report requires a showing not only that the plaintiff subjectively believed that the reported conduct violated the law, but also that this belief was objectively reasonable. See Wood, 661 F. Supp. 3d at 550. In other words, if a plaintiff both "subjectively and reasonably believed" that the reported conduct was unlawful, "then he establishes a plausible case at this juncture and survives the motion to dismiss." Id. (citations omitted).[3]

---

[3] The parties also seem to agree that this is the correct standard. While Workman cites two cases that suggest that the plaintiff need only show a subjective belief to constitute "good faith," he acknowledges that a whistleblower's belief that the reported conduct violated the law must also be reasonable. Pl.'s Mem. Opp'n, ECF No. 27, at 3–4 ("A whistleblower plaintiff . . . is protected when he reports conduct which he reasonably believes to be in violation of the law."). Both parties also point out that the standard is consistent with the definition of "good faith report" in Virginia's whistleblower statute for government employees, which defines it as "a report of conduct . . . that is made without malice and that the person making the report has reasonable cause to believe is true." Va. Code § 2.2-3010. "Good faith" is not defined in Virginia Code § 40.1-27.3.

Further, the court finds the two cases that Workman cites on this issue to be unpersuasive. Lawton v. Walker, 231 Va. 247, 251, 343 S.E.2d 335, 337 (1986), is a Virginia Supreme Court case that interpreted the Uniform Commercial Code definition of "good faith" to conclude that the test, "within the meaning of the UCC," is a "subjective one." Hinchman v. Performance Food Grp., Inc., 682 F. Supp. 3d 520, 526 (E.D. Va. 2023), relied on Lawton to conclude that "the accuracy of plaintiff's . . . report is not relevant to whether defendant violated the Virginia-whistleblower law; instead, what matters is whether plaintiff honestly believed that defendant violated the [law]." There, however, the court was assessing the issue within the context of whether the claim conferred federal question jurisdiction, and, in so doing, focused on the fact that the plaintiff is not required to prove an actual violation of federal law in stating a claim under the statute. See id. (comparing Virginia's whistleblower law to California's by stating that, "as here, the plaintiff was not required to prove an actual violation of federal law; instead the plaintiff only had to demonstrate that her suspicions were 'reasonably

Additional cases that have assessed the sufficiency of a plaintiff's claim under Virginia Code § 40.1-27.3 demonstrate that, for the purposes of a motion to dismiss, a plaintiff must plausibly link the reported misconduct to violations of law. For example, in Colquitt v. Bon Secour Mercy Health, No. 4:21-cv-053, 2022 WL 479093, at *5 (E.D. Va. Feb. 16, 2022), aff'd, No. 22-1288, 2022 WL 17848949 (4th Cir. Dec. 22, 2022) (per curiam), the court concluded that the claim must be dismissed because the plaintiff, appearing pro se, alleged only that she reported "misconduct" and "unethical practices." Id. Accordingly, she did not allege facts sufficient to show that she reported "a violation of any federal or state law or regulation," as required under the statute. Id.; see also Petersen v. DC Mech., LLC, No. 1:22-cv-784, 2022 WL 22695554, at *4 (E.D. Va. Aug. 24, 2022) (granting the motion to dismiss because the plaintiff had "not alleged sufficient facts showing that the reports he made of 'unlawful, and unethical practices' were reports about violations of federal or state law"). Similarly, in Chenault v. RBI Corp., 108 Va. Cir. 529, at *2 (2021), the court concluded that an employee's allegations that he was fired for "voicing concerns" and "objecting" to his employer's "cavalier attitude" toward the COVID-19 pandemic were "simply not enough to support a claim that [he] in good faith reported a violation to a supervisor," reaffirming the principle that a report must be rooted in specific violations of law.

Here, Workman alleges that he reported his co-worker's wife's conduct based on his belief that such conduct violated "both company policy and laws regarding harassment at the workplace and hostile work environments." Am. Compl., ECF No. 21, ¶ 27. He told his

---

based'"). Accordingly, the court accepts the parties' arguments—supported by caselaw—that a plaintiff must both subjectively and reasonably believe that the reported conduct violated the law to constitute "good faith."

supervisor that the co-worker's wife's comments were "sexualized, shocking, inappropriate for the workplace, amounted to harassment and resulted in what Mr. Workman perceived in good faith as a hostile working environment." Id. ¶ 29.

In his complaint, Workman founds his good faith belief regarding the unlawfulness of the reported conduct on Title VII of the Civil Rights Act of 1964 and two Virginia regulations that require home care organizations and hospice providers to implement written policies and procedures ensuring that clients and patients are "[t]reated with courtesy, consideration and respect," are "assured the right of privacy," and are "[f]ree from mental and physical abuse, neglect, and property exploitation," 12 Va. Admin. Code § 5-381-230 (home care organizations); id. § 5-391-240 (hospice providers). However, while Workman cites to Title VII and the Virginia regulations in his complaint, Am. Compl., ECF No. 21, ¶¶ 49–51, he does not allege that he informed his supervisor that these laws and regulations were the basis for his belief that the conduct at issue was unlawful, or that he even knew about these laws and regulations at the time of the report. Regardless, while Workman is not required to prove that the co-worker's wife's behavior was indeed unlawful, Wood, 661 F. Supp. 3d at 550, the court concludes that the conduct alleged is insufficiently specific to allow the court to determine whether Workman's alleged belief that the law had been violated was reasonable.

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Accordingly, while sexual harassment and hostile work environment are actionable under Title VII, the plaintiff must show that the offending conduct was based on sex—for example, by showing that "a woman is the individual target of open hostility because of her sex," Ocheltree v. Scollon Prods., Inc.,

335 F.3d 325, 331–32 (4th Cir. 2003) (citing <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 242–43 (4th Cir. 2000)), or that "a female victim is harassed in such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace," <u>id.</u> (internal alteration omitted) (quoting <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80 (1998)).

Further, even when the harassment is sex-based, "Title VII does not provide a remedy for every instance of verbal or physical harassment in the workplace." <u>Lissau v. S. Food Serv., Inc.</u>, 159 F.3d 177, 183 (4th Cir. 1998). Indeed, "[r]elief is unavailable where the alleged conduct 'is not severe or pervasive enough to create an objectively hostile or abusive work environment' or where the victim 'does not subjectively perceive the environment to be abusive.'" <u>Id.</u> (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)); <u>see</u> <u>also</u> <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 270 (2001) ("[S]exual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." (internal citations, quotations, and alterations omitted)). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) (quoting <u>Oncale</u>, 523 U.S. at 82).

These requirements are fatal to any plausible Title VII claim based on the nonspecific conduct alleged in Workman's amended complaint. Critically, Workman does not allege any

discrimination as to the reported conduct.[4] While the prospective client—a non-employee—was the alleged victim of the harassment, Workman appears to allege that the harassment falls within the ambit of Title VII because overhearing the harassment created a hostile work environment for him. Even if this were so, there is no allegation that such harassment was directed at the prospective client based on their sex[5] or that it was meant to create a hostile work environment for Workman because of his sex. Accordingly, it was unreasonable for Workman to believe that Title VII—the federal statute that prohibits employment discrimination—could be implicated by conduct devoid of discrimination.

Moreover, even if the reported conduct could be construed as evidence of sex-based discrimination, the court cannot conclude from the complaint that the harassment was "sufficiently severe or pervasive" to rise to the level of a hostile work environment. Ocheltree, 335 F.3d at 333. For one thing, this was a one-time incident that occurred outside of the workplace—albeit, at a work-sponsored function—by one non-employee to another non-employee. Even if Workman was offended by the behavior, it was unreasonable for him to believe that this isolated occurrence was enough to create a hostile work environment. Moreover, the complaint refers to the alleged offensive conduct in vague generalities only.

---

[4] Workman's only reference to discrimination in the amended complaint is when he pleads, "[p]ursuant to Title VII of the Civil Rights Act, employees such as Mr. Workman must work in an environment free of sexualized discrimination and/or hostile work environments." Am. Compl., ECF No. 21, ¶ 49. The court interprets "sexualized" discrimination to mean sex-based discrimination but finds no allegations that support a plausible claim of sex-based discrimination under Title VII.

[5] The amended complaint seems to identify the prospective client as male, but it is not clear. See Am. Compl., ECF No. 21, ¶ 23 ("Ms. Smith discussed sexualized practices, questioned a picnic participant regarding his sexual desires, and discussed sexual activity at length.").

Without more specific allegations, the court cannot ascertain whether the statements rise to the severe or pervasive level.

While Workman is not required to prove the unlawfulness of the conduct he reported to his supervisor in order to state a claim under Virginia Code § 40.1-27.3, he must show that he both "subjectively and reasonably believed" that the reported conduct was unlawful. Wood, 661 F. Supp. 3d at 550. On its face, the complaint does not allege conduct sufficient to support a reasonable belief on Workman's part that the one-time behavior of a non-employee toward another non-employee at a work-sponsored picnic could amount to a hostile work environment (under Title VII or otherwise). Accordingly, the court concludes that Workman has failed to sufficiently allege that he "in good faith report[ed] a violation of any federal or state law or regulation," and, accordingly, the court must grant LHC's motion to dismiss for failure to state a claim on this basis.[6]

## IV.CONCLUSION

For the foregoing reasons, LHC's motion to dismiss the amended complaint, ECF No. 25, is **GRANTED**. The amended complaint is **DISMISSED without prejudice**. Workman

---

[6] The court likewise finds that the two Virginia regulations that govern home care organizations and hospice care providers also did not provide Workman with a reasonable basis to conclude that the co-worker's wife was violating the law, as Workman acknowledges that the regulations apply to LHC's treatment of "clients" and he pleads in his amended complaint that the alleged victim of the harassment was not a client. See Am. Compl., ECF No. 21, ¶ 50 ("LHC 'shall establish and implement written policies and procedures regarding the rights of clients.'" (emphasis added)); id. ¶¶ 22, 24, 26 (referring to the person as a "prospective" and "potential" client). Moreover, even if they did extend to potential clients, there was no reasonable basis to believe that the cited regulations were violated, as their only mandate is that companies like LHC put policies and procedures in place regarding the rights of clients and that they inform clients of those rights. See 12 Va. Admin. Code § 5-381-230 ("The organization shall establish and implement written policies and procedures regarding the rights of clients."); id. § 5-391-240 ("The hospice program shall establish and implement written policies and procedures regarding the rights of patients."). Because the reported conduct did not implicate the existence or sufficiency of LHC's policies and procedures, it was not reasonable for Workman to believe that the conduct violated those regulations.

is granted leave of court to file a second amended complaint within thirty (30) days if he so

chooses.

An appropriate order will be entered.

Entered: July 26, 2024

Michael F. Urbanski
Senior United States District Judge