Case 1:23-cv-00048-MFU-PMS   Document 41   Filed 02/12/25   Page 1 of 15
                                Pageid#: 235

CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

February 12, 2025

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| JAMES EDWARD WORKMAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:23-cv-048 |
| ) | |
| v. ) | By:   Michael F. Urbanski |
| ) | Senior United States District Judge |
| LHC GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court on defendant LHC Group, Inc.'s motion to dismiss plaintiff James Edward Workman's second amended complaint for failure to state a claim. ECF No. 36. This court previously granted a motion to dismiss Workman's first amended complaint without prejudice and granted Workman leave of court to file a second amended complaint within thirty days. ECF No. 32. Because Workman still has not plausibly alleged that he reported conduct he both subjectively and reasonably believed to be unlawful, he has not stated a claim of retaliation under Virginia's whistleblower protection statute, Virginia Code § 40.1-27.3. The motion to dismiss is therefore **GRANTED**.

## BACKGROUND

Defendant LHC Group, Inc. ("LHC") provides home healthcare and hospice services. 2nd Am. Compl., ECF No. 33, ¶ 4. Plaintiff James Edward Workman was employed by LHC as an account executive in Wytheville, Virginia, id. ¶ 11, until he was terminated in the summer of 2022, id. ¶ 42. The complaint alleges that this termination was retaliation against Workman for reporting what he believed to be unlawful conduct to a supervisor. Id. ¶ 54. Workman's

1

sole cause of action is Virginia's whistleblower protection statute, which prohibits employers from discharging employees "because the employee . . . reports a violation of any federal or state law or regulation to a supervisor." Va. Code Ann. § 40.1-27.3(A)(1).

In June 2022, Workman was attending a picnic sponsored by LHC when he overheard a colleague's spouse, Ms. Smith, speaking to a picnic guest about sex. Id. ¶¶ 19-26. Workman alleges "upon information and belief" that the guest "was a prospective client of LHC" and that current LHC clients also overheard the conversation. Id. ¶ 22. Although Ms. Smith is not an employee of LHC, Workman alleges that she "routinely appears at official LHC events and at LHC facilities where she regularly interacts with employees and clients of LHC." Id. ¶ 29.

Although Workman "has no legal training," he believed LHC was "subject to state and federal regulations due to its operation as a licensed entity and as an entity that accepted Medicare and Medicaid funds" and "understood that sexualized comments and graphic descriptions of sexualized acts were unlawful under a variety of sources." Id. ¶¶ 30-31. Accordingly, Workman reported the conversation he overheard at the picnic to his supervisor. Id. ¶ 34. Workman alleges that he "informed his supervisor that he believed a law had been violated. Mr. Workman held a subjective belief that a law had been violated and a reasonable belief that the conduct had occurred." Id. ¶ 35. More specifically, Workman told his supervisor that a "sexually harassing environment [had been] fostered at a LHC event." Id. ¶ 54.

The complaint does not allege that Workman mentioned or had in mind any specific laws when he made his report to his supervisor. Id. However, the complaint cites several examples of laws one could hypothetically consider applicable: (1) Title VII of the Civil Rights Act's prohibitions on "sexualized discrimination" and "hostile work environments," id. ¶ 55;

2

(2) a Virginia regulation that requires that home care organizations like LHC "'shall establish and implement written policies and procedures regarding the rights of clients,'" id. ¶¶ 56-57 (quoting 12 Va. Admin. Code § 5-381-230); and (3) an ordinance of the Town of Wytheville, which provides that "'[n]o person shall willfully disturb any assembly of persons meeting for any proper purpose . . . or being drunk shall disturb the same,'" id. ¶ 58 (quoting Code of the Town of Wytheville, Virginia § 9-11). Workman does not allege that LHC did in fact violate any of these laws.

Workman acknowledges that also during the summer of 2022, prior to his termination, he appeared on a work video conference call while not wearing a shirt. Id. ¶ 46. "According to LHC, Mr. Workman was terminated for this alleged incident." Id. ¶ 42.

Workman filed his original complaint in state court on October 13, 2023. ECF No. 1-2. The case was removed to federal court on November 9, 2023. ECF No. 1. LHC moved to dismiss on December 7, 2023. ECF No. 13. Workman filed his first amended complaint on January 24, 2024. ECF No. 21. LHC again moved to dismiss on February 14, 2024. ECF No. 25. On July 29, 2024, this court granted the motion to dismiss the first amended complaint without prejudice, providing Workman leave to file a second amended complaint within thirty days. ECF No. 32.

The accompanying memorandum opinion explained that "while Workman is not required to prove that the co-worker's wife's behavior was indeed unlawful, . . . the conduct alleged is insufficiently specific to allow the court to determine whether Workman's alleged belief that the law had been violated was reasonable." ECF No. 31 at 8. Specifically, the court noted that Workman did not allege that the harassment was directed at the prospective client

3

based on their sex or that the harassment was intended to create a hostile work environment for Workman himself because of his sex. <u>Id.</u> at 10. "Accordingly, it was unreasonable for Workman to believe that Title VII—the federal statute that prohibits employment discrimination—could be implicated by conduct devoid of discrimination." <u>Id.</u> Because the complaint alleged only an isolated incident outside the workplace between a non-employee and another non-employee, the court further concluded that the conduct was not sufficiently severe or pervasive to give rise to a reasonable belief that Title VII had been violated. <u>Id.</u>

Workman filed his second amended complaint on August 28, 2024. ECF No. 33. The following factual allegations in the second amended complaint were marked as additions not present in Workman's prior complaints: that the person to whom Ms. Smith was speaking "upon information and belief, was a prospective client of LHC;" that "other clients of LHC" overheard the conversation; that the conversation was "graphic;" that Workman observed the conduct himself; that Ms. Smith routinely attends LHC events; that Workman had a "good faith belief that the conduct would occur again;" and that Workman subjectively believed a law had been violated and told his supervisor as much. 2nd Am. Compl., ECF No. 33, <u>passim</u>. The second amended complaint also cited the Town of Wytheville ordinance prohibiting willful or drunken disturbance of public meetings for the first time, <u>id.</u> ¶ 58, and the second amended complaint added legal argument as to how regulations concerning the written policies of home care organizations could be thought to apply to the conversation Workman overheard at the LHC picnic, <u>id.</u> ¶ 57.

The most notable addition in the second amended complaint is an introductory section arguing that the court's prior memorandum opinion applied "an incorrect standard." <u>Id.</u> at 1-

4

4. Workman contends that a plaintiff under the Virginia whistleblower statute need only show (a) that the plaintiff <u>reasonably</u> believed that the reported conduct factually occurred, and (b) that the plaintiff <u>subjectively</u> believed that the conduct was unlawful, whether or not that subjective belief was reasonable. <u>Id.</u> at 3-4.

LHC moved to dismiss on September 25, 2024. ECF No. 36. The motion has now been fully briefed, Resp., ECF No. 37; Reply, ECF No. 38, and an oral argument was held on January 29, 2025, ECF No. 40. Because Workman's legal arguments added to the second amended complaint are unavailing and because none of the facts added in the second amended complaint rectify the deficiencies cited in the court's prior memorandum opinion dismissing Workman's first amended complaint, the motion to dismiss is **GRANTED**.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Id.</u> at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. <u>Wikimedia Found. v. Nat'l Sec. Agency</u>, 857 F.3d 193, 208 (4th Cir. 2017). Nevertheless, a court is not required to accept as true "a legal

5

conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986); conclusory allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

## DISCUSSION

Virginia Code § 40.1-27.3 provides that "[a]n employer shall not discharge . . . an employee . . . because the employee . . . in good faith reports a violation of any federal or state law or regulation to a supervisor." Va. Code § 40.1-27.3(A)(1). Accordingly, to state a claim under the statute, the plaintiff must allege facts sufficient to show that "(1) []he made a good faith report of a federal or state violation to a supervisor, (2) was discharged by h[is] employer, and (3) h[is] report was the 'but for' cause of h[is] discharge." Moore v. Copper River Shared Services, LLC, No. CL-2023-9565, 2024 WL 366099, at *9 (Va. Cir. Ct. Jan. 30, 2024). Workman has not satisfied the first prong because he has not plausibly alleged that he made a "good faith report of a federal or state violation to a supervisor." Id.

Although case law interpreting Virginia Code § 40.1-27.3 is sparse, courts have found, at least at the motion to dismiss stage, that to show that a plaintiff made a good faith report of a violation of federal or state law, a "plaintiff is not required to show that the underlying report of unlawfulness was in fact meritorious to prevail." Wood v. Bristol Va. Util. Auth., 661 F. Supp. 3d 538, 550 (W.D. Va. 2023). "A plaintiff 'need only . . . prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was

6

occurring.'" Id. (citing Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003)). Thus, while a plaintiff's claim that unlawful conduct occurred need not be meritorious, it must be "reasonabl[e]." Id.

Workman's second amended complaint, like the court's prior memorandum opinion, relies on Wood v. Bristol Virginia Utility Authority to elucidate this reasonableness requirement. Id. In Wood, Wood's Virginia Code § 40.1-27.3 claim survived a motion to dismiss where he alleged that he had reported a violation of Virginia COVID regulations. Id. The court reasoned, "If Wood subjectively and reasonably believed that his employer was engaged in unlawful practices by encouraging employees infected with COVID to report to work and to remain at the worksite when he reported the matter to the safety manager and to OSHA, then he establishes a plausible case at this juncture and survives the motion to dismiss." Id. Here too, the question is whether Workman "subjectively and reasonably believed" LHC "was engaged in unlawful practices" by allowing Ms. Smith to make sexual comments at an LHC event.

This is the standard the court applied in dismissing Workman's first amended complaint. Mem. Op., ECF No. 31 at 6 (citing Wood, 661 F. Supp. 3d at 550). The court wrote, "[C]ourts also agree that a 'good faith' report requires a showing not only that the plaintiff subjectively believed that the reported conduct violated the law, but also that this belief was objectively reasonable." Id. However, Workman contends that this court's prior memorandum opinion "misapplied the standard used by federal and state courts," specifically, Wood, because "[t]his Court applied reasonableness to Plaintiff's concept of unlawfulness, not to the issue of truth of the conduct observed." 2nd Am. Compl., ECF No. 33 at 2. Workman

7

reads Wood to suggest that a plaintiff need only subjectively believe conduct was unlawful, and he argues that the objective reasonableness requirement applies exclusively to the plaintiff's belief that the conduct factually occurred. Id.

Workman's reading of Wood is simply incorrect. The language of Wood makes it clear that the plaintiff must "subjectively and reasonably believe" that the employer "was engaged in unlawful practices." Wood, 661 F. Supp. 3d at 550. This language does not distinguish between the plaintiff's belief that a particular practice was occurring and the plaintiff's belief that the practice was unlawful. Moreover, the Wood court itself considered the reasonableness of the plaintiff's belief that the alleged conduct—encouraging employees sick with COVID to continue working—was unlawful. The court noted that the Virginia Safety and Health Codes Board had indeed adopted a regulation that "forbid employers from allowing employees 'known or suspected to be infected with SARS-CoV-2 virus to report to or remain at the work site.'" Id. (quoting 16 Va. Admin. Code § 25-220-40(B)(5)). The Wood court did not go so far as to require finding a "meritorious" claim that a violation of the cited regulation occurred, id., but the court roughly compared the plaintiff's belief that conduct was unlawful to actual law to ascertain the objective reasonableness of the plaintiff's belief.

As Workman notes, the Wood court applied the Fourth Circuit's approach to Title VI retaliation protections from Peters v. Jenney. 327 F.3d 307 (4th Cir. 2003). Peters further confirms that the objective reasonableness requirement applies to the plaintiff's belief that conduct was unlawful. The Peters court summarized the Title VI standard as follows: "The inquiry is therefore (1) whether [the plaintiff] subjectively (that is, in good faith) believed that the district had engaged in a practice violative of § 601 [of Title VI], and (2) whether this belief

8

was <u>objectively</u> reasonable in light of the facts, a standard which we will refer to as one of 'reasonable belief.'" <u>Peters</u>, 327 F.3d at 321 (internal quotations omitted). Workman argues that this language divides the analysis such that the subjective standard applies to the belief that the conduct was unlawful while the objective standard applies to the belief that the conduct occurred. 2nd Am. Compl., ECF No. 33 at 3. However, when, in the second prong, the court refers to "this belief," which must be objectively reasonable, it is referring to the belief "that the district had engaged in a practice violative of § 601 [of Title VI]." <u>Peters</u>, 327 F.3d at 321. Once again, the belief <u>that the conduct occurred</u> and the belief <u>that the conduct was unlawful</u> are not disaggregated. Instead, the belief <u>that unlawful activity occurred</u> must be both subjectively held by the plaintiff and objectively reasonable.

The precedents underlying <u>Peters</u> further confirm that the reasonableness requirement applies to the plaintiff's belief that conduct was unlawful. <u>Peters</u> cited the Eleventh Circuit's retaliation standard stated in <u>Weeks v. Harden Manufacturing Corp</u>. 291 F.3d 1307, 1312 (11th Cir. 2002). That court explicitly stated, "[T]he plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable. As we have stated previously, '[i]f the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.'" <u>Id.</u> at 1317 (citing <u>Harper v. Blockbuster Ent., Corp.</u>, 139 F.3d 1385, 1388 n.2 (11th Cir. 1998)). Here too, Workman's claim that he "has no legal training" does not permit him to evade the objective reasonableness requirement. 2nd Am. Compl., ECF No. 33, ¶ 30.

Thus, the court applied the correct standard in its prior opinion when it required that, to state a claim, a Virginia Code § 40.1-27.3 plaintiff must allege that he reported conduct he

9

both subjectively and reasonably believed to be unlawful. To satisfy the objective reasonableness component of this analysis, as this court previously explained, "a report must be rooted in specific violations of law." Mem. Op., ECF No. 31 at 7; see also Petersen v. DC Mech., LLC, No. 1:22-cv-784, 2022 WL 22695554, at *4 (E.D. Va. Aug. 24, 2022) (granting motion to dismiss where the plaintiff had "not alleged sufficient facts showing that the reports he made of 'unlawful, and unethical practices' were reports about violations of federal or state law"); Chenault v. RBI Corp., 108 Va. Cir. 529, 2021 WL 8776245, at *2 (2021) (finding that an employee's allegation that he was fired for "'voicing concerns'" about his employer's "'cavalier attitude'" toward the COVID-19 pandemic were "simply not enough to support a claim that [he] in good faith reported a violation to a supervisor"). Alleging "misconduct" or "unethical practices" is not enough; a plaintiff must allege facts sufficient to show that he reported something objectively resembling "a violation of any federal or state law or regulation." Colquitt v. Bon Secour Mercy Health, No. 4:21-cv-053, 2022 WL 479093, at *5 (E.D. Va. Feb. 16, 2022), aff'd, No. 22-1288, 2022 WL 17848949 (4th Cir. Dec. 22, 2022) (per curiam). Here, even if Workman subjectively believed that it was unlawful for a guest to discuss sex with another guest at a picnic hosted by his employer, he has not shown that belief to be objectively reasonable based on any specific violations of law.

First, it is not reasonable to believe that unspecified comments about sex made at a work-sponsored function by a non-employee guest to another non-employee guest violate sex discrimination laws, like Title VII. Workman's second amended complaint, like his first amended complaint, fails to describe the content of Ms. Smith's remarks, so it is impossible to conclude that they resembled discrimination based on sex (or race, color, religion, or

national origin) such that a reasonable person could believe unlawful activity had taken place. 42 U.S.C. § 2000e-2(a)(1) (enumerating protected traits covered by Title VII). Title VII does not prohibit all conversation about sex in work-related settings; it prohibits discrimination "because of . . . sex." Id. "'The critical issue [in the "because of sex" inquiry] is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Because the complaint does not allege anything about what was said other than that it was "graphic," 2nd Am. Compl., ECF No. 33, ¶ 24, the complaint does not suggest that Ms. Smith targeted the prospective client for a conversation about sex because of his sex or that the things she said were of a nature that would impact people of one sex differently from people of a different sex.

Furthermore, the allegation, which was added in the second amended complaint, that Ms. Smith routinely appears at LHC events, id. ¶ 29, does not make it any more reasonable to believe that the conduct was "so severe or pervasive as to alter the conditions of the victim's employment," Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (internal citations omitted). Workman has not alleged, for example, that Ms. Smith has behaved in a similarly offensive manner when she has attended previous events.

It is also unreasonable to believe that a violation of employment discrimination law could occur without the employer's involvement. See Freeman v. Dal-Tile Corp., 750 F.3d 413, 423 (4th Cir. 2014) (requiring a plaintiff to allege that his company "knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to

11

end the harassment"). Workman has not alleged that LHC encouraged Ms. Smith, failed to intervene once it was aware of her conduct, or was otherwise involved in Ms. Smith's actions.

The second amended complaint now notes that "Mr. Workman understood that sexualized comments and graphic descriptions of sexualized acts were unlawful under a variety of sources, but did not possess legal training or education to highlight sections of the Virginia Code or federal law." 2nd Am. Compl., ECF No. 33, ¶ 31. The problem with Workman's allegations, however, is not that he failed to cite Title VII by name, or even that his allegations fail to incorporate a "meritorious" Title VII claim. Wood, 661 F. Supp. 3d at 550. The problem is that a reasonable person would not believe that generic conversation about sex between two non-employees at a work-sponsored picnic violates employment discrimination law. It does not take legal training to understand that employment discrimination requires at least some combination of (1) discrimination based on a protected trait, like sex; (2) sufficient severity such that an employee's conditions of employment are affected; and (3) wrongdoing on the part of the employer. Workman has not alleged any details of the picnic encounter that could even bring Ms. Smith's activities into the ballpark of employment discrimination law.

Second, Workman has not plausibly alleged either that he subjectively or reasonably believed Ms. Smith's comments violated Virginia regulations concerning home care organizations. The only allegations in the second amended complaint about Workman's subjective belief that a specific violation of law had occurred are those concerning Workman's belief that Ms. Smith's actions implicated "laws regarding harassment at the workplace and hostile work environments." 2nd Am. Compl., ECF No. 33, ¶ 27. There is nothing to suggest

12

that Workman subjectively believed that laws governing home care organizations provided additional grounds for deeming Ms. Smith's actions at the picnic unlawful.

Nor would it be reasonable to believe that regulations of home care organizations prohibit people who are not employed by home care organizations from discussing sex with prospective clients of home care organizations at picnics sponsored by home care organizations. Workman contends that 12 Va. Admin. Code § 5-381-230(C) is a substantive requirement that home care organizations "'shall ensure that each client [is] treated with courtesy, consideration and respect.'" Id. ¶ 57. However, the plain text of the regulation, which appears in a section of the administrative code on "Licensure of Home Care Organizations," within a provision requiring that home care organizations "shall establish and implement written policies and procedures regarding the rights of clients," provides only that "[w]ritten procedures to implement the policies shall ensure that each client is . . . [t]reated with courtesy, consideration and respect." 12 Va. Admin. Code § 5-381-230. The regulation requires that policies be put in place to protect the rights of clients; it does not provide a freestanding guarantee of client's rights. Workman's interpretation would make every act of discourtesy or disrespect involving a client of a home care organization unlawful. It is not reasonable to believe that Ms. Smith, a non-employee, violated laws governing home care organizations by speaking about sex at a picnic simply because the person with whom she was speaking "was a prospective client of LHC." 2nd Am. Compl., ECF No. 33, ¶ 22. Indeed, Workman has not even alleged that the prospective client appeared uncomfortable.

Third and finally, Workman has not plausibly alleged either that he subjectively or reasonably believed Ms. Smith's comments violated a Town of Wytheville ordinance

13

prohibiting willfully or drunkenly disturbing "any assembly of persons meeting for any proper purpose." Code of the Town of Wytheville, Virginia § 9-11. Workman's allegation that this local ordinance might have been violated is new to the second amended complaint. However, Workman does not allege that he subjectively believed that Ms. Smith's conduct was unlawful because she was disturbing a public gathering. The new allegation instead states, "Though Plaintiff was not an attorney, the conduct of which he complained <u>may be considered</u> a violation of the ordinance of the Town of Wytheville." 2nd Am. Compl., ECF No. 33, ¶ 58 (emphasis added). This language indicates that Workman himself did not consider this possibility.

Moreover, it is not reasonable to believe that Ms. Smith's conduct violated this Wytheville ordinance because Workman has not alleged that Ms. Smith acted drunkenly or willfully. Additionally, although Workman alleges that Ms. Smith's "comments were overheard by Mr. Workman and other employees," <u>id.</u> ¶ 26, Workman does not allege that a disturbance of any kind took place. Thus, Workman's report of Ms. Smith's conduct to his supervisor cannot be linked even by approximation to any specific violation of law.

## CONCLUSION

Workman's second amended complaint fails to state a plausible claim for relief under Virginia Code § 40.1-27.3. Workman's legal arguments concerning this court's prior ruling are meritless, and the additional facts alleged in the second amended complaint fail to establish that Workman reported conduct he both subjectively and reasonably believed to be unlawful. Accordingly, the motion to dismiss is **GRANTED**.

An appropriate order will be entered.

Entered: 02/12/2025

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Senior United States District Judge